UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| KOREY A. ALWOOD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 3:07-CV-422 PS |
| | ) | |
| WILLIAM K. WILSON, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

Korey A. Alwood, a pro se prisoner, filed a complaint under 28 U. S. C. § 1983 alleging that, while he was incarcerated at the Westville Correctional Facility in 2007, the defendants violated his constitutional rights under the Eighth and Fourteenth Amendments.  Pursuant to 28 U.S.C. § 1915(a), the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.  Courts apply the same standard under § 1915(a) as when addressing a motion under Rule 12(b)(6). *Lagerstrom v. Kingston*, 463 F.3d 621, 624 (7th Cir. 2006).

The pleading standards were retooled last year by the Supreme Court. In the context of a motion to dismiss for failure to state a claim, the Court stated that the "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic v. Twombley*, 127 S.Ct. 1955, 1964-65 (2007).  Instead, the Court held that the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Id*. at 1965.  Two weeks later the Supreme Court decided *Erickson v. Pardus*, 127 S. Ct. 2197 (2007).  In

*Erickson* the Court also took up the issue of pleading standards, but this time in the context of pro se litigation. In *Erickson*, the Court stated that "[s]pecific facts are not necessary" to meet the requirements of Rule 8(a). The Court further noted that a "document filed pro se is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Id*. at 2200. In an effort to reconcile *Twombley* and *Erickson*, the Seventh Circuit has read those cases together to mean that "at some point the factual detail in a complaint may be so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8." *Airborne Beepers & Video, Inc. v. AT&T Mobility*, 499 F.3d 663, 667 (7th Cir. 2007).

## BACKGROUND

Alwood alleges the facility's superintendent, William Wilson, instituted a "management plan" that required him to be shackled and chained whenever he left his cell. [Complaint, DE 1 at 3]. He does not indicate how long this plan was in effect. Alwood states that on one occasion, while in the shower, he tripped over the shackles and fell. Besides being knocked unconscious, he sustained a cut on his face. Alwood also claims that he was strapped to a bed in four-way restraints for more than four hours. He contends these restraints cut his wrists because the officer (Lt. Reveter) intentionally secured them in a manner that would hurt him. Alwood denies doing anything to warrant this treatment. Rather, he maintains that the officer who applied the four-way restraints was retaliating against him because of his alleged relationship with a nurse; he insists no such relationship existed. [DE 1 at 4].

2

DISCUSSION

**1.       Fourteenth Amendment Claims**

The court will first address the issue of whether Alwood states a claim under the Fourteenth Amendment.  As a general matter, the right to "liberty from bodily restraint always has been recognized as the core of the liberty protected by the Due Process Clause from arbitrary government action."  *Youngberg v. Romeo*, 457 U.S. 307, 316 (1982), *quoting Greenholtz v. Nebraska Penal Inmates*, 442 U.S. 1, 18 (1979) (Powell, J., concurring).  "This interest survives criminal conviction and incarceration."  *Youngberg*, 457 U.S. at 317.  But it is by no means absolute, and prison administrators are afforded wide-ranging deference in adopting and executing the policies and practices that in their judgment are necessary to preserve order, discipline, and security.  *Bell v. Wolfish*, 441 U.S. 520, 547 (1979).

Alwood first complains that Superintendent William Wilson placed Alwood in a management plan that required him to be shackled whenever he was outside of his cell.  [Complaint, DE 1 at 3].  He does not indicate the duration or time-frame of these occurrences.  As a prisoner, the restriction of one's movements while being transferred from one place to another is an ordinary incident of prison life.  In *Sandin v. Conner*, 515 U.S. 472 (1995), the Supreme Court held that inmates have a liberty interest in avoiding discretionary placement in more restrictive prison conditions if, when compared to "the ordinary incidents of prison life," those conditions result in an "atypical and significant hardship" either in duration or degree.  *Sandin,* 515 U.S. at 484-86.  Since he was chained only when he was not in his cell, the conditions of his management plan are not constitutionally significant.  *See Key v. McKinney*, 176 F.3d 1083, 1086 (8th Cir.1999) (prisoner who was restrained in handcuffs and shackles for

3

24 hours, making it more difficult for him to relieve himself, did not suffer a constitutional violation). Therefore, Alwood does not state a claim that his management plan violated his Fourteenth Amendment rights because, under *Sandin,* the alleged deprivation did not implicate a constitutionally-protected liberty interest.

The allegation that Lt. Reveter arbitrarily and maliciously ordered Alwood to be restrained to his bed in excess of four hours does, however, raise constitutional concerns. Four-way restraints present a more substantial deprivation than shackles and chains. Depending on the circumstances, four-way bed restraints in excess of four hours may impose an "atypical and significant hardship" in comparison to ordinary prison life. *See Sandin*, 515 U.S. at 484. Giving Alwood the benefit of the inferences he is entitled to at this stage, he has stated a claim that his restriction to four-way bed restraints violated his Fourteenth Amendment rights.

### 2. Eighth Amendment Claims

Alwood also maintains the shackling and four-way restraints violated his Eighth Amendment rights. The Eighth Amendment prohibits conditions of confinement that "involve the wanton and unnecessary infliction of pain" or that are "grossly disproportionate to the severity of the crime warranting imprisonment." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). "[T]he use of bodily restraints constitutes punishment in the constitutional sense if their use is not rationally related to a legitimate non-punitive government purpose or they appear excessive in relation to the purpose they allegedly serve." *May v. Sheahan*, 226 F.3d 876, 884 (7th Cir. 2000).

Alwood states he was required to wear shackles even when he showered. As a result he was injured when he fell in the shower after tripping over them. He does not charge, and it is not

4

reasonable to infer, that the shackles involve the wanton and unnecessary infliction of pain. Because Alwood denies he did anything to justify having to wear them, however, he suggests the shackles are grossly disproportionate to the severity of the crime warranting imprisonment.  But, conditions that create temporary inconveniences and discomforts or make confinement unpleasant are insufficient to state an Eighth Amendment claim.  *Farmer v. Brennan*, 511 U. S. 825, 832 (1994); *Adams v. Pate*, 445 F.2d 105, 108-09 (7th Cir.1971).

Nevertheless, the Court must consider whether requiring Alwood to wear shackles while in the shower created a substantial risk of serious harm to which any defendant was deliberately indifferent. *Farmer*, 511 U. S. at 834.  Deliberate indifference is comparable to criminal recklessness, and is shown by "something approaching a total unconcern for [the inmate's] welfare in the face of serious risks" or "a conscious, culpable refusal to prevent harm."  *Duane v. Lane*, 959 F.2d 673, 676 (7th Cir. 1992).  Requiring a particular inmate to shower in shackles for security reasons does not evince deliberate indifference to an inmate's health or safety. *Branham v. Meachum*, 77 F.3d 626, 631 (2d Cir. 1996); *LeMoire v. Maass*, 12 F.3d 1444, 1457 (9th Cir. 1993) (shackling a dangerous inmate in a shower "do[es] not state an even arguable claim for cruel and unusual punishment" even if the risk of falling on a slippery floor are greater).

Alwood further claims that his conduct did not justify his being shackled whenever he was out of his cell, including while he was in the shower.  As stated above, prison officials have wide discretion to determine what measures should be taken in order to preserve order and security in a detention facility.   Therefore, whether or not Alwood needed to be chained and shackled as a security precaution was a determination for the prison administrators to make.

Under the circumstances, Alwood does not state a claim his Eighth Amendment rights were violated because he tripped because he was required to wear shackles while showering.

As noted above, the use of four-way restraints presents a more significant challenge. *See French v. Owens*, 777 F.2d 1250, 1253-1254 (7th Cir.1985). Their use may or may not be permissible; it depends on the circumstances. *Bruscino v. Carlson* , 854 F.2d 162, 164-66 (7th Cir.1988) (upholding the use of four-way restraints "for hours at a stretch" for purposes of control in response to specific instances of misbehavior). While some form of temporary restraint may be necessary against those who pose a threat to themselves and others, using four way restraints improperly may come "too close to the rack and the screw to permit of constitutional differentiation." *French,* 777 F.2d at 1253-54 (quoting *Rochin v. California,* 342 U.S. 165, 172 (1952)).

Alwood claims he was kept in four-way restraints for more than four hours and denies he did anything to warrant being restricted in this way. Moreover, it is not apparent that any professional personally saw Alwood before or during the time he was in four-way restraints. Additionally, Alwood states the restraints cut his wrists and suggests the Lt. Reveter intentionally used excessive force in fastening them for the purpose of hurting him. For an excessive force claim the inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992); *Fillmore v. Page*, 358 F.3d 496, 503 (7th Cir.2004). Several factors contribute to this determination, including "the need for the application of the force, the amount of force applied, the threat an officer reasonably perceived, the effort made to temper the severity of the force used, and the extent of the injury that the force caused to an inmate." *Fillmore*, 358 F.3d at

6

504. Under these standards, Alwood states a claim that placing him in four-way restraints violated his rights under the Eighth Amendment.

Therefore, the Court:

(1) **GRANTS** Korey Alwood leave to proceed against Lt. Reveter in his individual capacity for monetary damages on his Eighth and Fourteenth Amendment claims that the officer impermissibly employed four-way restraints and that he used excessive force while placing him in those restraints;

(2) **DISMISSES** all other claims;

(3) **DISMISSES** William Wilson;

(4) **DIRECTS** the United States Marshals Service to effect service of process on Lt. Reveter; and

(5) **ORDERS**, pursuant to 42 U.S.C. § 1997e(g)(2), Lt. Reveter to respond to the complaint as provided for in the Federal Rules of Civil Procedure.

**SO ORDERED.**

ENTERED: June 13, 2008.

 s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT